AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

| | |
|---|---|
| United States of America<br>v.<br>ROBERTO JUAREZ<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )  Case No. SA-24-MJ- 118 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of JANUARY 24, 2024 in the county of BEXAR in the WESTERN District of TEXAS, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Count 1: 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)<br><br>Count 2: 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 | Possession with Intent to Distribute 5 Kilograms or More of Cocaine; Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine<br><br>Both Counts: Imprisonment: 10 years to life; Supervised Release: 5 years to life; Fine: Up to $10 million; Special Assessment: $100 |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☒ Continued on the attached sheet.

JAIME I SANCHEZ  *Digitally signed by JAIME I SANCHEZ*
*Date: 2024.01.25 14:06:35 -06'00'*
*Complainant's signature*

Jaime Sanchez, HSI Special Agent
*Printed name and title*

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date: January 25, 2024

*Judge's signature*

City and state: San Antonio, Texas            RICHARD B. FARRER, US MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT

I, **Jaime Sanchez**, being duly sworn, state the following:

## INTRODUCTION AND BACKGROUND OF AGENT

1. I am a special agent with the United States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"). HSI is the principal investigative arm of DHS. I have been employed as a special agent since July 2018 and am currently assigned to HSI's Special Agent in Charge office in San Antonio, Texas. I am a graduate of the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Brunswick, Georgia. Prior to becoming a Special Agent, I was employed as a commissioned Texas peace officer with both the Texas Attorney General's Office (criminal investigator) for approximately six (6) years and the City of San Antonio, Texas for approximately four (4) years. During my employment with the Texas Attorney General's Office, I was also a task force officer with the Federal Bureau of Investigation ("FBI") for approximately two (2) years. I hold a Bachelor of Arts in Criminal Justice degree, a Bachelor of Business Administration in Economics degree, and a Master of Business Administration degree.

2. My experience as a Special Agent includes, but is not limited to, conducting physical surveillance, interviewing suspects, and witnesses, writing affidavits, executing search warrants, and participating in, or leading, a series of criminal investigations. I have received training on the investigation of violations of the federal controlled substances laws and have been personally involved in numerous drug trafficking and drug smuggling investigations. As a result of training, education, experience, and discussions with other law enforcement personnel, I am familiar with the clandestine way in which controlled substances are processed and packaged, concealed, smuggled, transported, stored, and sold in the United States. I am also aware through

my experience and training that members of drug organizations employ practices and counter-surveillance methods to avoid detection by law enforcement.

3. As a special agent, I am a federal law enforcement officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses in violation of the United States Code.

4. I make this Affidavit, in part, based on my personal observation, experience, training; my personal knowledge gathered during my participation in this investigation; information conveyed to me by other law enforcement officers and witnesses involved in this investigation, either personally in conversation or through their reports; my review of physical evidence obtained during the investigation; and my review of records obtained during this investigation. This affidavit is submitted for the limited purpose of establishing probable cause, and it does *not* include each fact of this investigation.

5. Based on the facts set forth herein, I submit that there is probable cause to believe that on or about January 24, 2024, in the Western District of Texas and elsewhere, Defendant Roberto JUAREZ ("JUAREZ") possessed with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A); and that on or about this same date, JUAREZ conspired, combined, confederated, and agreed, with others known and unknown to law enforcement, to possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, contrary to 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), in violation of 21 U.S.C. § 846.

**FACTS SUPPORTING PROBABLE CAUSE**

6. The United States, including Homeland Security Investigations ("HSI") and the Drug Enforcement Administration ("DEA"), is conducting a criminal investigation of Roberto JUAREZ ("JUAREZ") regarding violations of 21 U.S.C. §§ 841 and 846, pertaining to the possession with intent to distribute a controlled substance, and conspiracy to possess with intent to distribute a controlled substance. In summary, investigators believe JUAREZ is illegally possessing with intent to distribute and distributing controlled substances, including cocaine and is conspiring with others in furtherance of those illegal activities.

7. On November 2, 2023, HSI Special Agents (SAs) in Eagle Pass, Texas arrested an individual for the importation of controlled substances in violation of federal law, after the individual was caught by United States Customs and Border Protection officers attempting to smuggle more than 10 kilograms of cocaine into the United States.

8. During a post-*Miranda* interview with HSI SAs, this individual admitted to smuggling and delivering narcotics by vehicle on three (3) prior occasions for monetary gain to a person the individual referred to as "Veto" at residences in San Antonio, Texas, including Veto's residence. The individual advised that Veto sent the delivery addresses and the individual used the "Maps" application on the individual's cell phone to find and deliver the drugs. The individual advised that on her first load, the individual went to Veto's house in San Antonio and waited inside Veto's house while the drugs were removed from the individual's vehicle, and that the individual did not see anyone else in Veto's house while the individual waited. A consensual search of the individual's cell phone revealed a photograph of a residence with the address of 11333. In addition, the individual's cell phone showed that the individual shared the individual's geographical location with Veto. The individual photo identified Roberto JUAREZ as Veto.

9. My review of records obtained during this investigation, to include law enforcement databases, show that JUAREZ resides at 11333 Eagle Tree, San Antonio, Texas 78245 ("JUAREZ's residence").

10. On November 27, 2023, I conducted physical surveillance of JUAREZ's residence. During this surveillance, I observed a male matching JUAREZ's physical description standing in the driveway of the residence, and then entering the residence.

11. On November 27, 2023, I conducted additional surveillance of JUAREZ's residence. While conducting surveillance at JUAREZ's residence, a black Ford F-150 arrived at JUAREZ's residence. The driver of the black F-150, an adult male, got out of the black F-150 and spoke to an individual appeared to be JUAREZ at the bed of a vehicle parked in the driveway of JUAREZ's residence, and JUAREZ was determined to be the registered owner of that vehicle. The driver of the black F-150 then grabbed a bulky, black gym bag with gray straps that appeared full, from the bed of JUAREZ's vehicle and carried the bag to the passenger rear door of the black F-150. The driver of the black F-150 opened the rear door of the black F-150, placed the bag inside the truck, and departed JUAREZ's residence.

12. On January 24, 2024, HSI special agents along with DEA special agents, and HSI and DEA task force officers, were conducting further surveillance of JUAREZ's residence. While conducting surveillance, at about 3:10 p.m., I saw JUAREZ exit his garage and open the driver-side front door to a green Ford Excursion that was parked in his driveway. JUAREZ then went back into the garage and came out of the garage carrying a closed medium-size cardboard box with his arms, that was approximately 18x18x15 in size, which JUAREZ placed on the front seat of the Excursion. JUAREZ then when back into the garage and came out of the garage carrying another closed medium-size cardboard box with both arms, which appeared to be the same size as the first

box, and placed the box on the front seat of the Excursion, and closed the door. JUAREZ then went back into the garage, then came out later to a yellow Ford Mustang that was also parked in the driveway. JUAREZ opened the passenger side door of the Mustang, rolled down the window, and then closed the door.

13. About 20 minutes later, a light gray 2012 GMC Express G1500 van, bearing Georgia license plate SDT1976, approached JUAREZ's residence and parked in front of the driveway. The male driver of the van, later identified as Jose Luis VASQUEZ, Jr. ("VASQUEZ"), charged elsewhere, got out of the van and spoke to JUAREZ in the driveway. JUAREZ then opened the driver-side middle doors of the van, then walked back to his Excursion, retrieved one of the medium boxes from the Excursion, and placed that box in the van. JUAREZ then walked back to the Excursion and retrieved the second medium box, placed that box in the van, and closed the doors to the van. JUAREZ and VASQUEZ then continued to speak in the driveway, both outside of the van. While they were talking, I observed a sunshade being placed onto the front windshield of the van from the inside of the van, which indicated that another person was inside the van, as JUAREZ and VASQUEZ were both outside of the van at this time. After about 10 minutes, VASQUEZ opened the same passenger doors of the van, and JUAREZ retrieved the now open and empty boxes with one hand and placed them into the yellow Mustang through the open window. The doors of the van were closed, and JUAREZ and VASQUEZ continued to talk for about five more minutes in the driveway.

14. VASQUEZ then reentered the van and departed the residence. HSI and DEA agents and officers, including myself, followed VASQUEZ to a Roadster convenience store, located at 8630 US-90, San Antonio, Texas 78227, where the van parked a gasoline pump. An adult female, later identified as Theresa ARZATE (ARZATE), also charged elsewhere, got out of

5

the van and entered the store. ARZATE then came out of the store and re-entered the van. No one else entered or exited the van during this time. VASQUEZ, still driving the van, departed the store. A San Antonio Police Department (SAPD) officer, in uniform and in a marked police vehicle, then stopped the van in the 7500 block of US-90 eastbound access road after observing traffic violations, including the van crossing a solid white line, and the van's third brake light being defective. The SAPD officer contacted the driver, VASQUEZ, and advised him of the reason for the traffic stop. ARZATE was in the front passenger seat of the van, and there were no other occupants in the van.

15.     During the traffic stop, VASQUEZ admitted that he had some cocaine in his pocket, which the officer found. A second SAPD officer, who was assisting with the traffic stop, then ordered ARZATE out the van. The second SAPD officer then saw that ARZATE was holding a small baggie of cocaine in her hand. Both VASQUEZ and ARZATE were placed under arrest for possession of a controlled substance, and the van was inventoried for safekeeping. During the inventory, the SAPD officers found 31 packages, that weighed approximately 35 kilograms, of what later tested positive for the properties of cocaine; two firearms; and nine firearm magazines inside the van. The packages of cocaine, firearms, and magazines were seized. During a brief post-*Miranda* interview at the stop location, VASQUEZ admitted that he had 31 packages of cocaine in the van, before VASQUEZ asked for a lawyer, at which point, the interview was immediately terminated.

16.     During the booking process, ARZATE asked for a pen and paper and wrote down "*11333 or 113333 Eagle Trail? Drive? Yellow Mustang @ Front of House. House on corner st. Tall, Dark Hair, Gr. Eyes, Lean*" and signed it. [Agent's note: the PREMISES / JUAREZ's residence is located at 11333 Eagle Tree, San Antonio, TX 78245, and the physical description

ARZATE wrote matches JUAREZ's.]   In addition, during transportation to the detention facility, ARZATE admitted to HSI task force officers, without being prompted, that Jose [VASQUEZ] told her to stay in the van [when they arrived at JUAREZ's house], and a dark-complexioned guy came out of the house and put the "cubes" of cocaine in the van.  After she and VASQUEZ departed the PREMESIS, ARZATE said that Jose [VASQUEZ] told her to count the "cubes" [packages of cocaine], and that she counted about 30 cubes.

## FEDERAL CHARGES AND PROSECUTION

17.    Based on the above facts, there is probable cause to believe that on or about January 24, 2024, in the Western District of Texas and elsewhere, Defendant Roberto JUAREZ ("JUAREZ") possessed with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A); and that from on or about November 1, 2023, until on or about January 24, 2024, JAUREZ conspired, combined, confederated, and agreed, with VASQUEZ and ARZATE (both charged elsewhere), and others known and unknown to law enforcement, to possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers, contrary to 21 U.S.C. § 841(a)(1) and 841(b)(1)(A), in violation of 21 U.S.C. § 846.

18.    The penalty for both of the listed offenses is a mandatory minimum term of imprisonment of 10 years, up to a lifetime of imprisonment; a mandatory minimum term of supervised release of five years, up to a lifetime of supervised release; a fine of up to $10 million; and a $100 mandatory special assessment.

19.     Assistant United States Attorney John Fedock has agreed to prosecute this case in the Western District of Texas.

                                      Respectfully submitted,

JAIME I SANCHEZ
Digitally signed by JAIME I SANCHEZ
Date: 2024.01.25 14:05:19 -06'00'

Jaime Sanchez
Special Agent
Homeland Security Investigations

Sworn telephonically on this __25th__ day of January 2024.

_____
Richard B. Farrer
United States Magistrate Judge